**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTHONY HARP,

       *Plaintiff,*

                        CASE NO. 5:19-cv-13789

*v.*

                        DISTRICT JUDGE JUDITH E. LEVY

VICTORIA HALLETT,             MAGISTRATE JUDGE PATRICIA T. MORRIS

LASHLEY, DRUM, LADD, and

TRANSPORTATION OFFICERS

       *Defendants.*

_____/

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 35)

## I.   RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment. (ECF No. 35.)

If the Report and Recommendation is adopted, the Court would: (1) **GRANT** summary judgment in favor of Defendant Drum, with prejudice, as to Plaintiff's claim that Drum violated Plaintiff's First Amendment Rights by issuing a retaliatory misconduct ticket; (2) **DENY** summary judgment in favor of Drum, Ladd, Lashley, and the Transportation Officers as to Plaintiff's claims that they violated his rights under the First Amendment, the Eighth Amendment, and Article 1, § 16 of the Michigan Constitution by inhibiting Plaintiff's access to medical care; and (3) **DISMISS** Plaintiff's official capacity claims against Drum, Ladd, Lashley, and the Transportation Officers, insofar as Plaintiff requests monetary damages.

II.   **REPORT**

A.   **Background**

Plaintiff is an inmate with prostate cancer in the custody of the Michigan Department of Corrections ("MDOC") at the G. Robert Cotton Correctional Facility ("JCF"). (ECF No. 1, PageID.8; ECF No. 33-1, PageID.144.)  Beginning in spring of 2019, transportation officers at JCF would frequently drive Plaintiff to a nearby hospital so he could receive radiation treatment.  (ECF No. 35-3, PageID.234.)  But the officers treated Plaintiff with hostility, often calling him derogatory terms such as a "blind cripple" and a "son of [a] bitch." (*Id.*)  Unwilling to tolerate the officers' comments, Plaintiff eventually refused treatment altogether. (*Id.*)

Concerned that Plaintiff had refused radiation treatment, prison officials asked Plaintiff to sign a "release of responsibility" form on May 15, 2019. (*Id.*)  Plaintiff did not sign the form, maintaining that he should not have to "ride with transportation officers" who would harass him. (*Id.*)  After he refused to sign the form, Plaintiff temporarily was not "allowed to go to treatment." (*Id.*)

Plaintiff raised this issue in a formal grievance on May 20, 2019. (*Id.*)  The MDOC provides a three-step, internal process for prisoners to raise formal complaints. (ECF No. 35-2, at PageID.209.)  At step one, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a grievance within five business days. (*Id.* at PageID.212–13.)  If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, then he or she may file a step two grievance using the appropriate form. (*Id.* at PageID.214.)

Similarly, if the inmate is dissatisfied with the step two response or does not receive a response for ten days after the response was due, he or she has ten days to file a step three grievance. (*Id.* at PageID.215.) An inmate's appeal at either step is considered "filed" on the date it is received. (*Id.* at PageID.212.)

A day after Plaintiff filed this grievance, he was scheduled to attend another radiation treatment at the hospital. (ECF No. 35-3, PageID.244.) Plaintiff decided to attend this appointment, and to compensate for his poor vision, Plaintiff attempted to bring several "visual aids," including a "monoscope," a "talking watch," a cane, and "solar-shields." (*Id.*) Although Plaintiff had taken these items with him on previous trips and had explained that he needed them "to read and sign documents," transportation officers did not allow Plaintiff to take his assistive devices with him. (*Id.*) Rather than attend his appointment without his visual aids, Plaintiff stayed at the prison. (*Id.*) The following day, Plaintiff again tried to take his "visual aids" with him to another appointment, but chose to stay at the prison after transportation officers prevented Plaintiff from bringing his devices. Plaintiff filed a grievance regarding both events on May 26. (*Id.*)

On June 11, transportation officers took Plaintiff to a hospital for radiation treatment. (ECF No. 35-4, PageID.252.) Before Plaintiff's treatment, Defendant Drum, one of the transportation officers, escorted Plaintiff to the oncology department's bathroom so he could urinate. (*Id.*) Once Plaintiff entered the bathroom, he asked Drum to remove his constraints, but Drum refused. (*Id.*) Drum then "propped" the door open with his foot despite Plaintiff's requests that he close the door. (*Id.*) Upset that he could not urinate privately and free of restraints, Plaintiff called Drum a "little bitch," and demanded that the

officers take him back to JCF.  (*Id.* at PageID.249.)  The officers returned Plaintiff to JCF

without treatment, and Drum later wrote a misconduct report, accusing Plaintiff of

insolence, threatening behavior, and sexual misconduct.  (*Id.* at PageID.252.)

A Michigan administrative law judge ("ALJ") held a hearing on Plaintiff's

misconduct ticket on June 18.  (*Id.* at PageID.249.)  At the time of the hearing, Plaintiff

had been "confined since June 11."  (*Id.*)  Although Plaintiff admitted that he asked the

officers to take him back to JCF and called Drum a "bitch," he accused Drum of filing the

misconduct report "because of a grievance" Plaintiff had filed against the transportation

officers.  (*Id.*)  The ALJ found that Plaintiff was guilty of insolence and threatening

behavior, and sanctioned Plaintiff with three more days of detention.  (*Id.*)  Plaintiff

received a copy of the ALJ's hearing report on June 26, and although he had thirty days to

request a rehearing, the MDOC did not receive Plaintiff's rehearing request until August

5.  (*Id.*; ECF No. 35-5, PageID.265.)

While Plaintiff was confined, the MDOC responded to his May 20 and May 26

grievances.  (ECF No. 35-3, PageID.234, 244.)  Prison officials wrote on Plaintiff's May

20 grievance, titled Grievance "00982," that it was returned to Plaintiff on June 13.  (*Id.* at

PageID.234.)  However, because Plaintiff was in detention at the time, he did not receive

the response until June 17.  (ECF No. 40, PageID.312.)  Officials purportedly returned

Plaintiff's May 26 grievance, titled Grievance "00983," on June 18.  (ECF No. 35-3,

PageID.244.)  But because Plaintiff was still detained when the MDOC returned this

grievance, he might not have received the response until later.  (*See* ECF No. 35-4,

PageID.249.)  In any event, Plaintiff requested a step two appeal form for Grievance 00982

4

on June 19.  (ECF No. 40, PageID.312.)  On June 23, Plaintiff sent another request for a step two appeal form, this time requesting forms for both Grievance 00982 and Grievance 00983.  (*Id.* at PageID.313.)

Plaintiff did not receive the appeal forms until July 5.  (*See* ECF No. 35-3, PageID.232, 237, 242.)  Plaintiff completed and sent the forms the day he received them, but the MDOC did not receive Plaintiff's appeals of Grievance 00982 and Grievance 00983 until July 8 and July 9, respectively.  (*Id.* at PageID.232, 242.)  The MDOC rejected both appeals as untimely.  (*Id.*)

On August 6, Plaintiff met with transportation officers to attend another off-site radiation treatment.  (*Id.* at PageID.229.)  But before Plaintiff could leave, Defendant Lashley, another transportation officer, threatened Plaintiff, stating that if Plaintiff did not "refuse" treatment, Lashley would put Plaintiff "in the hole again."  (*Id.*)  Plaintiff protested, claiming that he "did [not] do anything wrong," to which Lashley replied that Plaintiff did not "do anything" wrong "the first time [they] put [him] in the hole either." (*Id.*)

Plaintiff filed a grievance the next day, alleging that Lashley made this threat "in retaliation" for Plaintiff's May 20 Grievance.  (*Id.*)  Plaintiff claimed his issues with the transportation officers were ongoing, stating that the incident with Lashley was simply a "prime example of the mistreatment and harassment" he experiences whenever he goes to the hospital for radiation treatment.  (*Id.*)  Plaintiff accused the officers of "trying to kill" him by inhibiting his access to radiation treatment and claimed that this violated his First and Eighth Amendment rights.  (*Id.*)  Plaintiff appealed this grievance through all three

steps and the MDOC rejected Plaintiff's grievance on the merits at each step.  (*Id.* at PageID.226–230.)

Subsequently, Plaintiff filed a complaint in which he alleged (1) that Drum issued the misconduct report in retaliation for an earlier grievance and (2) that "multiple" transportation officers prevented him from attending radiation treatment appointments by threatening "to issue false misconduct[]" reports.  (ECF No. 1, PageID.8–9.)  Plaintiff claimed that these threats were made "in retaliation for" a Grievance he filed on May 21 and that the officers acted with "deliberate indifference."  (*Id.*)  Plaintiff also broadly alleged that the following rights had been violated, without explicitly stating who violated these rights or how these rights were violated: (1) his right to be free from cruel and unusual punishment under the Eighth Amendment and the Michigan Constitution, (2) his First amendment right "to be free of retaliation," and (3) his right to "petition the government for the redress of grievances" under the Michigan Constitution.  (*Id.* at PageID.5.)

Following an unsuccessful attempt at mediation, Defendants Drum, Ladd, and Lashley moved for summary judgment, arguing only that Plaintiff had not properly exhausted his administrative remedies before filing his lawsuit.  (ECF Nos. 15, 35.)

### B.    Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists.  Fed. R. Civ. P. 56(a).  In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).  The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted).  In making its determination, a court may consider the plausibility of the movant's evidence.  *Matsushita*, 475 U.S. at 587–88.  Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof.  *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993).  The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later.  10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998).  "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party."  *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp.2d 489, 492 (D. N.J. 2010).  In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.  And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'"  *Veloz v. New York*, 339 F. Supp.2d 505, 513 (S.D.N.Y. 2004) (quoting

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479–80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C.    Analysis

The Prison Litigation Reform Act ("PLRA") provides that prisoners may not bring a § 1983 action against prison officials, challenging the conditions of their confinement, without first exhausting their available administrative remedies. 42 U.S.C. § 1997e(a) (2012); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Further, prisoners must "properly" exhaust their administrative remedies, meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules . . .

." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).  Failure to exhaust administrative remedies in an affirmative defense that must be raised by the defendant.  *Jones v. Bock*, 549 U.S. 199 (2007).

### 1.    Plaintiff's Claims

At the outset, I take a moment to clarify what claims Plaintiff brings against the Defendants.

The Defendants identify three distinct claims in Plaintiff's complaint: (1) that Defendant Hallett violated Plaintiff's Eighth Amendment rights by discontinuing his pain medication; (2) that Defendant Drum violated Plaintiff's First Amendment rights by issuing a misconduct report in retaliation for a grievance that Plaintiff had filed against a group of transportation officers; and (3) that unknown transportation officers, not including Ladd, Drum, or Lashley, violated Plaintiff's First Amendment rights by threatening Plaintiff and preventing him from attending radiation treatment in retaliation for an earlier grievance.  (ECF No. 35, PageID.188.)

Defendants properly construe the first two claims, but they read Plaintiff's last claim too narrowly.  A complaint "must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  Accordingly, pro se complaints, "however inartfully pleaded, must be" construed "liberally" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

First, I suggest that Plaintiff's last claim applies not only to the unknown transportation officers, but also to Ladd, Drum, and Lashley.  In paragraphs six through

ten, Plaintiff describes how transportation officers discouraged him from attending radiation treatment by threatening to issue misconduct reports against him, but Plaintiff refers only to the "unknown correctional transport officers." (ECF No. 1, PageID.8–9.) Ladd, Drum, and Lashley argue that because they and the unknown transportation officers were listed separately as defendants, Plaintiff only intended to bring this claim against the unknown officers. (*See id.* at PageID.2–4.)

However, Plaintiff attached a document to his complaint where he clarified that "Lashley, Drum, Ladd[,] and the unknown [transportation] officers . . . retaliated against" Plaintiff by "interfere[ing] with Plaintiff's physician[-]ordered radiation treatment." (*Id.* at PageID.17); *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that exhibits attached to a complaint are considered part of the pleadings). Reading Plaintiff's complaint in its entirety, he alleges that Ladd, Drum, and Lashley engaged in the same conduct as the unknown transportation officers. (*See* ECF No. 1, PageID.8–9, 17.) Indeed, under the Defendants' interpretation, Plaintiff would have brought no claims against Ladd or Lashley despite listing them as defendants. (*See id.* at PageID.2–4, 8–9.) Plaintiff's first two claims apply exclusively to Hallett and Drum, respectively, and only Plaintiff's third claim, which explicitly lists the unknown officers, could apply to Ladd or Lashley. (*See id.* at PageID.8–9.) The undersigned doubts that Plaintiff would have listed Ladd and Lashley as defendants if he did not intend to bring a claim against them. Accordingly, I suggest that Plaintiff's third claim applies to Ladd, Drum, Lashley, and the unknown transportation officers.

Second, I suggest that Plaintiff not only alleges that Ladd, Drum, Lashley, and the unknown officers violated his First Amendment rights, but that the same conduct also violated his Eighth Amendment right to be free from cruel and unusual punishment. In the beginning of his complaint, Plaintiff establishes that he is bringing a § 1983 claim, in part, because officials violated his "Eighth Amendment right[s]"—who exactly violated these rights, and under what circumstances, Plaintiff does not say. (*Id.* at PageID.5.) However, when Plaintiff later discusses the facts underlying his claims, he mentions that the transportation officers who prevented him from attending radiation treatment acted not only "in retaliation," but also with "deliberate indifference" to his medical needs. (*Id.* at PageID.8–9.) Moreover, Plaintiff alleges that the officers "intentionally inflict[ed] unnecessary pain and suffering" upon Plaintiff. (*Id.* at PageID.8.) Notably, the phrase "deliberate indifference" refers to the required state of mind that an official must act with to violate an inmate's Eighth Amendment rights. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). I suggest that Plaintiff's use of this term of art, read in conjunction with his allegation that the officers inflicted "pain and suffering," indicates that Plaintiff intended to bring an Eighth Amendment claim.[1]

Accordingly, Plaintiff brings three claims, relevant to this motion, that must have been exhausted. First, Plaintiff alleges that Drum issued a misconduct report against Plaintiff in retaliation for a grievance that Plaintiff had previously filed; second, Plaintiff alleges that Drum, Ladd, Lashley, and the unknown Defendants retaliated against Plaintiff

---

[1] Plaintiff also brought a claim, arising from the same conduct, under an analogous provision of the Michigan Constitution.

for filing a grievance by threatening to issue misconduct reports and deterring Plaintiff from attending radiation therapy; and third, Plaintiff alleges that by deterring him from attending radiation therapy, Drum, Ladd, Lashley, and the unknown Defendants violated his right to be free from cruel and unusual punishment under both the Eighth Amendment and the Michigan Constitution.  I consider whether Plaintiff properly exhausted each of these claims in turn.[2]

### 2.    Drum's Misconduct Report

Defendants first argue that Plaintiff did not properly exhaust his administrative remedies as to his claim that Drum issued a false misconduct ticket.  Generally, the MDOC requires that prisoners exhaust their administrative remedies through a three-step grievance process.  (ECF No. 35-2, PageID.209.)  However, the MDOC does not allow prisoners to grieve "decisions made" on misconduct tickets at "prison hearings . . . ."  *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5, (E.D. Mich. Feb. 27, 2019); (*see also* ECF No. 35-2, PageID.210.)  Instead, for a prisoner to fully exhaust a decision made at a prison hearing he or she must "submit a Request for Rehearing . . . within [thirty] calendar days after" he or she prisoner receives a copy of the hearing report.  (ECF No. 35-6, PageID.278); *see also* Mich. Comp. L. §§ 791.254(3), .255(1).

This process applies where a prisoner alleges that an officer issued a retaliatory misconduct ticket.  *Brown v. Klotz*, No. 19-11509, 2020 WL 6390500, at *3 (E.D. Mich.

---

[2] Plaintiff also broadly alleges that his right to "petition the government for the redress of grievances" under the Michigan Constitution was violated.  (ECF No. 1, PageID.5.)  Plaintiff does not allege any facts to support this claim and he does not specify who he brings this claim against.  (*Id.*)  But whatever its merits, Defendants do not acknowledge this claim and they do not argue that Plaintiff failed to exhaust his administrative remedies.  (*See* ECF No. 35, PageID.188.)

Aug. 17, 2020).  In these situations, the prisoner must raise retaliation as an issue during the hearing, and if unsuccessful, file a timely request for a rehearing.  *Id.*  Michigan prisoners may not raise this issue in a written grievance.  (ECF No. 35-2, PageID.210.)

On June 18, 2019, a Michigan administrative law judge ("ALJ") held a hearing on Plaintiff's misconduct ticket.  (ECF No. 35-4, PageID.250–51.)  Although Plaintiff accused Drum, at the hearing, of filing the misconduct ticket in retaliation, the ALJ did not believe Plaintiff's testimony, and instead found that Plaintiff was guilty of two of the three charges in the ticket.  (*Id.*)  Plaintiff received a copy of the ALJ's decision on June 26, and his request for a rehearing was due on July 26.  (*Id.*)  However, the MDOC's hearing administrator did not receive Plaintiff's request until August 5.  (ECF No. 35-5, PageID.265.)

Based on this evidence, Defendants argue that there are no factual issues concerning the date Plaintiff's request was "submitted."  Indeed, the MDOC received Plaintiff's request ten days[3] after the deadline, and the record contains no evidence otherwise.  But in reaching this conclusion, Defendants assume that a prisoner's request for a rehearing is "submitted" on the day it is received by the MDOC, not the day it is sent by the prisoner.

This distinction matters.  If the request here was submitted when it was received, then summary judgment in favor of Drum would be appropriate, but if the term "submitted"

---

[3] Defendants argue that Plaintiff received his response on June 25.  However, the record contains evidence from which a reasonable factfinder could conclude that Plaintiff did not receive the report until the following day.  Specifically, the ALJ's hearing report states that it was "given to" a "staff member" for delivery on June 25.  (ECF No. 35-4, PageID.249.)  But the same report is stamped as "copied" by the hearings investigator at JCF on June 26, suggesting that prison officials still possessed the report on June 26 and had not yet returned it to Plaintiff.  (*Id.*)

refers the date the request was sent, then an issue of fact concerning the date Plaintiff's request was sent would preclude summary judgment. The record contains no evidence regarding the date Plaintiff sent his request, other than a declaration by an MDOC hearings administrator, stating that the request was received on August 5. (ECF No. 35-5, PageID.265.) Although a factfinder could infer from the delivery date that the request was sent after the deadline, a juror need not reach this conclusion. Indeed, there are many reasons why delivery of a letter might be delayed, and a factfinder could reasonably conclude that by merely providing the date of receipt, Drum has failed to prove, by a preponderance of the evidence, that Plaintiff sent his request after the deadline. Ultimately, this is a factual question not appropriate for summary judgment.

Fortunately for Drum, he is correct that the term "submitted," here, refers to the date the request was received, not the date it was sent by Plaintiff. The MDOC's policies regarding exhaustion of misconduct tickets are mandated by statute. Mich. Comp. L. §§ 791.254(3), .255(1). Indeed, a Michigan statute provides that prisoners may not seek judicial review of an unfavorable hearing decision without first "fil[ing] a motion or application for rehearing." *Id.* § 791.255(1). This request "shall be *filed* within 30 days after the final decision or order is issued after the initial hearing." *Id.* § 791.254(3) (emphasis added). Because the MDOC's policy implements this explicit statutory mandate, the word "submit" in the internal MDOC policy appears to be used synonymously with the term "filed" in the statute.

The statute, however, does not define the term "filed." So, in the absence of a more precise definition provided by the Michigan Legislature, the Court must interpret the

meaning of the word "filed" according to its "ordinary meaning." *B.P. America Production Co. v. Burton*, 549 U.S. 84, 91 (2006). In other contexts, the Supreme Court has explained that under its ordinary meaning, the word "filed" refers to a document that has been both sent and delivered. *See, e.g.*, *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). "The word 'file' is derived from the Latin word 'filum'" which refers to "the ancient practice of placing papers on a thread or wire for safe-keeping and ready reference." *United States v. Lombardo*, 241 U.S. 73, 76 (1916). Thus, ordinarily, "filing . . . is not complete until the document is delivered and received." *Id.* Accordingly, because The MDOC received Plaintiff's request for a rehearing after the deadline, I suggest that summary judgment should be granted in favor of Drum as to Plaintiff's claim that Drum retaliated against Plaintiff by filing a false misconduct ticket.[4]

### 3. Plaintiff's Claims Against the Transportation Officers

Defendants also argue that Plaintiff failed to properly exhaust his claims that Ladd, Drum, Lashley, and the unknown Defendants retaliated against Plaintiff for filing a prior grievance by deterring Plaintiff from attending radiation treatment. Plaintiff has filed three

---

[4] I further suggest that summary judgment be granted with prejudice. Generally, dismissal for failure to exhaust administrative remedies under the PLRA "*should* be without prejudice." *Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (emphasis added). However, "a claim that has been properly rejected by the prison grievance system on procedural grounds should be dismissed from the plaintiff's complaint with prejudice" because "[o]nce a prison formally denies an inmate's grievance for" procedural reasons such as "untimeliness, and . . . the court upholds the decision, the inmate's failure to exhaust is no longer 'a temporary, curable, procedural flaw.'" *Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004). Here, judgment without prejudice would make little sense because Plaintiff's procedural flaw is not curable. Plaintiff cannot file any subsequent grievances within the deadlines provided by the MDOC Grievance policies; therefore, it is impossible for him to properly exhaust his administrative remedies. *See Ramirez v. Hungness*, No. 10-112, 2010 WL 1839015, at *1 (E.D. Ky. May 6, 2010); *see also Murphy v. Lockhart*, 826 F. Supp.2d 1016, 1029–30 (E.D. Mich. 2011); *Harris v. PA A. NDIFE*, No. 06-CV-223, 2006 WL 3469552, at *3 (E.D. Ky. Nov. 30, 2006).

grievances that are relevant to these claims: Grievance "00983," filed on May 28, 2019; Grievance "00982," also filed on May 28; and Grievance "1456," filed on August 9. (ECF No. 35-3, PageID.229, 234, 244.) For the following reasons, I suggest that while Plaintiff did not properly exhaust Grievances 00982 and 00983, Plaintiff properly did properly exhaust Grievance 1456. Accordingly, I suggest that Plaintiff has only exhausted the issues raised in Grievance 1456.

### a.  Grievances 00982 and 00983

Plaintiff's first two grievances, 00982 and 00983, were properly rejected as untimely at step two. After filing his step one grievances, Plaintiff received a response to Grievance 00982 on June 17, 2019, and Plaintiff received a response to Grievance 00983 sometime between June 18 and June 23. (*Id.* at PageID.234, 244; ECF No. 40, PageID.310, 312–13; ECF No. 35-4, PageID.249.) Accordingly, Plaintiff's step two appeal of Grievance 00982 was due on July 1, and his step two appeal of Grievance 00983 was due on July 5. (*See* ECF No.35-2, PageID.214.) But Plaintiff did not send his step two responses until July 5. (ECF No. 35-3, PageID.232, 242.) As a result, Grievance 00982 was not received by the MDOC until July 9, and Grievance 00983 was not received until July 8. (*Id.*; *see* ECF No. 35-2, PageID.212 (providing that grievances are submitted on the date received by the MDOC).)

Plaintiff concedes that he filed his step two grievances late, but he argues that prison officials rendered his step two grievance unavailable because they did not supply him with the necessary form until July 5—several days after the deadline had passed. (ECF No. 40, PageID.309–10.) However, the MDOC's policies allowed Plaintiff to request up to a

fifteen-day extension of his step two grievance deadlines, and if these deadlines were extended, Plaintiff could have filed his step two grievances on time.  (*See* ECF No. 35-2, PageID.212.)  Plaintiff did not request this extension.  Thus, the issue before this Court is whether the MDOC's failure to provide Plaintiff with the necessary forms before the deadline rendered his step two grievance unavailable even though Plaintiff could have requested an extension that may have allowed him to file his grievance on time.

Although prisoners must properly exhaust their administrative remedies before filing a lawsuit, they need only exhaust administrative remedies that are "available."  *Ross v. Blake*, 578 U.S. 632, 642 (2016).  In other words, a prisoner need only exhaust remedies that are "'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 732–38 (2001)).

One situation where an administrative remedy may be unavailable is where "prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation."  *Ross*, 578 U.S. at 644.  Where prison officials "devise procedural" roadblocks that prohibit a prisoner from properly exhausting his grievance, that administrative remedy is no longer available, and it need not be exhausted.  *Id.*  This includes situations where prison officials withhold materials that a prisoner needs to properly exhaust his or her claims.  *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Tilman v. City of St. Louis, Mo.*, No. 4:21cv299, 2021 WL 981859, at \*3–4 (E.D. Mo. Mar. 16, 2021); *Hunt v. Carver*, No. 1:19-00356, 2020 WL 9348170, at \*8 (S.D. W. Va. Nov. 25, 2020).

But even where prison officials withhold materials necessary for a prisoner to file a grievance until after the grievance's deadline, the prisoner's administrative remedies are still available if the prisoner could have requested an extension that would have allowed him or her to file the grievance on time. *See Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013); *Dury v. Seroski*, No. 1:20-cv-01058, 2021 WL 3486383, at *2 (D. Colo. Aug. 9, 2021); *Jordan v. Bertolini*, No. 1:15-cv-313, 2018 WL 3737917, at *4–5 (W.D. Pa. Aug. 7, 2018) ("[I]n failing to request an extension, Plaintiff has failed to exhaust his administrative remedies.").

For example, in *Feuer v. McCollum*, the Tenth Circuit held that although a federal prisoner had not received all of the necessary materials to file a timely grievance, he still had not exhausted his administrative remedies because he neglected to request an extension. 139 F. App'x 928, 931 (10th Cir. 2005). In *Feuer*, the prisoner filed a formal grievance with his warden, which was later denied. *Id.* at 929–30. Under the applicable regulations, if the prisoner's grievance was denied by the warden, he was required to appeal his grievance to the regional director, with a copy of the warden's response attached to his appeal. *See id.* However, because the prisoner had been transferred to a different prison while his formal grievance was pending, he did not receive the warden's response until well after his appeal was due. *Id.* at 930–31. Regardless, the Tenth Circuit reasoned that the prisoner's administrative remedies were still available because "he may have been entitled to an extension" and therefore had not been prevented from filing his appeal in time. *Id.* at 931.

18

Similarly, here, Plaintiff could have submitted his step two grievances on time if he had requested extensions.  Had Plaintiff requested an extension, his due date for Grievance 00982 could have been extended to July 22, at the latest, and his due date for Grievance 00983 could have been extended to July 26, at the latest.  (ECF No.35-2, PageID.214.)  This would have given Plaintiff enough time to submit the forms he received on July 5.  Plaintiff's administrative remedy simply was not unavailable if the MDOC's policies provided a mechanism which he could have used to submit this grievance on time.  *Cf. Feuer*, 139 F. App'x at 931; *Jordan*, 2018 WL 3737917, at *4–5.

To be sure, there is no guarantee that the MDOC would have granted Plaintiff's extensions, or that had his extensions been granted, Plaintiff still would have received his forms before his step two grievances were due.  But this Court cannot hold that Plaintiff's administrative remedies were unavailable just because the MDOC *might* have prevented Plaintiff from submitting his step two grievances on time.  *Watkins v. Donnelly*, 551 F. App'x 953, 959 (10th Cir. 2014).  Plaintiff should have requested extensions to "spare [the court] from speculat[ing]" as to whether, had Plaintiff attempted to fully comply with the MDOC's policies, his administrative remedies would have been available.  *Id.*  Indeed, the Sixth Circuit has repeatedly held that prisoners must fully exhaust their administrative remedies even where they believe that doing so would "be ineffectual or futile."  *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (quotation marks omitted) (quoting *Pack v. Martin*, 174 F. Appx. 256, 262 (6th Cir.2006)).  Accordingly, I suggest that Plaintiff failed to properly exhaust Grievances 00982 and 00983.

**b.      Grievance 1456**

A few months after filing Grievances 00982 and 00983, Plaintiff filed Grievance 1456, which alleged that on August 6, Plaintiff was scheduled to receive radiation treatment at a nearby hospital; however, before Plaintiff could leave for the hospital, Defendant Lashley warned Plaintiff to "refuse" transportation services, or else Lashley would place Plaintiff in detention.  (ECF No. 35, PageID.449.)   Although Plaintiff only mentioned Lashley by name, he alleged that other unknown transportation officers had engaged in similar conduct, apparently in retaliation for a grievance that Plaintiff had previously filed. (*Id.*)   Grievance 1456 was properly exhausted and denied on its merits, but Defendants argue that it does not exhaust Plaintiff's claims against Drum and Ladd because they were not named in the grievance.  (*Id.*)

Although the PLRA itself does not require that prisoners name each defendant in his or her grievance, the MDOC's internal policies require that prisoners provide the "[d]ates, times, places[,] and names of all those involved in the issue." *Hall v. Warren*, 443 F. App'x 99, 106 (emphasis removed) (6th Cir. 2011); *see also Jones*, 549 U.S. at 217– 18.  Courts in this Circuit have repeatedly held that "there is no substantive difference between identifying a defendant by name . . . , position, or other information." *Mahaffey v. Buskirk*, No. 13-14646, 2014 WL 2864099, at *12 n.13 (E.D. Mich. June 24, 2014). This is because "[t]he purpose of the exhaustion requirement is to give notice to prison officials of the inmates claims so that the complaints can be resolved by prison administrators in the first instance." *Skinner v. Unknown Grandson*, No. 05-70556, 2006 WL 1997392, at *6 (E.D. Mich. Jul. 14, 2006) (citing *Thomas v. Woolum*, 337 F.3d 720, 722–23 (6th Cir.2003)).  Accordingly, a prisoner adequately names an individual in his or her grievance

by providing enough information for prison officials to discern the individual's identity. *See Everett v. Ward*, No. 3:20-cv-00228, 2020 WL 7483442, at *4 (E.D. Ark. Dec. 11, 2020); *Christian v. Michigan Dep't of Corrs.-Health Servs.*, No. 12-12936, , at *4–5 (E.D. Mich. Sept. 24, 2013); *Hudson v. DeForest*, No. 09-11245, 2010 WL 1141606, at *3 (E.D. Mich. Mar. 1, 2010).

Here, the Court does not have enough information to determine whether prison officials could have ascertained Ladd and Drum's identities from Plaintiff's reference to unknown "transportation officers."  Defendants bear the burden of establishing that no genuine issues exist as to any material fact, and that they are entitled to judgment as a matter of law; however, based on the record before the Court, Defendants have not met this burden.  *See Matsushita*, 475 U.S. at 587; *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).  The Court knows only that Ladd and Drum are transportation officers, and that some unknown transportation officers allegedly retaliated against Plaintiff for filing a grievance—this is not enough information for a reasonable factfinder to determine whether prison officials could have determined the identities of the "unknown officers" named in Plaintiff's grievance.  (ECF No. 35, PageID.188; ECF No.35-3, PageID.229.)

Defendants do not provide the Court with information relevant to prison officials' ability to determine the identities of the unknown officers mentioned in Plaintiff's grievance.  *See Surles*, 678 F.3d at 456.  For example, the Court does not know how many transportation officers work at the prison, how transportation officers are assigned to prisoners, or whether the prison keeps a record of which officers have transported Plaintiff

to the hospital.[5]  Perhaps JCF employs only a small handful of transportation officers, or perhaps certain officers are assigned to Plaintiff, specifically.  In either situation, prison officials may have been able to identify the unknown transportation officers.

But even if Ladd and Drum were not adequately named in Grievance 1456, I suggest that by considering Grievance 1456 on its merits, Defendants have waived exhaustion as a defense to the issues raised in this grievance.  Where prison officials excuse a prisoner's procedural mistakes and consider a grievance on its merits, they may not later argue that the prisoner had failed to properly exhaust his or her administrative remedies.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  For this reason, the Sixth Circuit held in *Reed-Bey v. Pramstaller* that where a prisoner does not name *any* individuals in his or her grievance, officials may not later argue that the prisoner failed to properly exhaust his or her administrative remedies if the prisoner's grievance was rejected on its merits.  *Id.* at 324–25.

By contrast, when a prisoner names specific individuals in a grievance, the prisoner may not later bring claims against defendants who were not named in the grievance, even if prison officials considered the grievance on its merits.  *Brown v. McCulick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. 2019); *Ewing v. Finco*, No. 1:17-cv-505, 2018 WL 6033537, at *4 (W.D. Mich. Sept. 1, 2018*); Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146, at *2 (W.D. Mich. Oct. 24, 2013).  This is because when a prisoner names a specific individual in his or her grievance, prison officials generally do not "excuse" the

---

[5] The MDOC's response to Grievance 00983 suggests that some officers do keep records of the prisoners they transport.  (ECF No. 35-3, PageID.244.)

prisoner's failure to name other individuals by considering the grievance on its merits. *Brown*, 2019 WL 5436159, at *3.  Rather, prison officials simply are not aware that the prisoner could have included other officials in the same grievance.  *Id.*

Arguably, then, if Plaintiff did not properly identify the "unknown" officers, Defendants did not waive this argument because one individual—Lashley—was named in the grievance.  (ECF No. 35-3, PageID.229.)  But unlike these cases, prison officials were aware that there were unnamed individuals, apart from Lashley, who were involved in the incident.  *Cf. Brown*, 2019 WL 5436159, at *3.  Rather than rejecting Plaintiff's grievance, at least in part, for failing to adequately name the "unknown officers," prison officials chose to deny Plaintiff's grievance entirely on the merits.  (ECF No. 35-3, PageID.227–29.)  This decision shall be respected.  *See Reed-Bey*, 603 F.3d at 325.  Accordingly, because the Defendants have waived this defense, I suggest that Plaintiff has properly exhausted his administrative remedies against Drum, Ladd, Lashley, and the unknown defendants as to the issues raised in Grievance 1456.

### c.    Plaintiff's Properly Exhausted Claims

A properly exhausted grievance only exhausts a prisoner's administrative remedies as to the individuals and issues identified in the grievance—a prisoner may not raise entirely new issues in his or her complaint.  *Burley v. Quiroga*, No. 16-cv-10712, 2019 WL 2208560, at *11 (E.D. Mich. 2019), *report and recommendation adopted by Burley v. Quiroga*, No. 16-cv-10712, 2019 WL 1147023 (2019) (citing *Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002)).  A prisoner raises a "new issue" before the district court asserting an entirely new claim arising out of either a distinct cause of action or an unrelated series

23

of events.  *See, e.g.*, *Ford*, 49 F. App'x at 585 (holding that a plaintiff raised a new issue before the district court by alleging different constitutional violations, arising out of the same conduct, than what were alleged in his grievances); *Baldridge-El v. Gundy*, 238 F.3d 419 (6th Cir. 2000) (holding that a plaintiff raised new issues by referring to events that were not mentioned in his grievance).

Accordingly, Plaintiff may only bring claims against the Defendants that were properly exhausted by Grievance 1456.  Although Plaintiff alleges that Ladd, Drum, Lashley, and the unknown defendants caused him to miss over sixty-four medical between May 15, 2019 and August 26, 2019, only the specific incidents grieved in 1456 are properly before this Court.

Before discussing which events Plaintiff raised in Grievance 1456, I note that the MDOC's grievance policies provide limits on the issues that could be properly raised in this grievance.  First, prisoners must begin the grievance process within two days of a grievable incident.  (ECF No. 35-2, PageID.212.)  Accordingly, prisoners generally may not grieve an ongoing series of incidents—once a specific, grievable incident occurs, a prisoner must attempt to resolve the issue with the appropriate officer within two days, and if unsuccessful, file a grievance within another five days.  (*See id.*)  Additionally, the MDOC's policies do not allow prisoners to file "duplicative" grievances—once a grievance has been filed and denied, that issue may not be raised again.  (*Id.* at PageID.210.)  The prisoner may not continue to grieve the same issue until he or she receives a favorable outcome.

Had the MDOC enforced its procedural rules, it could have declined to consider any issues raised in Grievance 1456 that either (1) were already raised in Grievances 00982 and 00983, or (2) had occurred more than two days prior to the date Plaintiff began the grievance process.  But as previously discussed, prison officials did not reject Grievance 1456 on procedural grounds, and Defendants may not now raise any procedural issues with the grievance.  *See Reed-Bey*, 603 F.3d at 325.  The result is that any issue raised by Plaintiff in Grievance 1456 may now be brought as a claim against the Defendants, even if an issue was already raised in a prior grievance or occurred more than two days before Plaintiff began the grievance process.[6]

Grievance 1456 begins by addressing a specific incident.  On August 6, Plaintiff states that he was scheduled to travel to a hospital for radiation treatment, but before he could leave, Officer Lashley, upset that Plaintiff had previously filed a grievance against a group of transportation officers, demanded that Plaintiff decline transportation, or else Lashley would place Plaintiff in detention.  (ECF No. 35-3, PageID.229.)

But Plaintiff's grievance went on to describe a history of similar events which he apparently took issue with.   According to Plaintiff, Lashley then admitted that the transportation officers had placed Plaintiff in detention once before although Plaintiff had not "do[ne] anything wrong."  (*Id.*)  Plaintiff referred to his encounter with Lashley as "a prime example of the mistreatment" he receives "every time [he tries] to go to the hospital

---

[6] Nor would res judicata prevent Plaintiff from filing multiple grievances.  *Greene v. Miller*, No. 2:16-cv-44, 2016 WL 6662558, at*5 (W.D. Mich. Oct. 24, 2016) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).

. . . ." (*Id.*)  Plaintiff complained that "this" ongoing problem "has to stop," and that the transportation officers did not just interfere with his treatment on one occasion, but that they were "interfering" with his health care, suggesting that this was an ongoing problem. (*Id.*)  Plaintiff alleged that this conduct violated his First and Eighth Amendment rights. (*Id.*)

Apparently, prison officials construed Plaintiff's grievance as alleging not just a single violation, but an ongoing problem with transportation officers.   Indeed, the respondent to Plaintiff's step one grievance stated that Plaintiff "ha[d] been refusing his medical treatments," and that Plaintiff "ha[d] repeatedly tried to force his transportation mode back to the facility . . . ." (*Id.*)

Considering the scope of Plaintiff's grievance, I suggest that Plaintiff did not just grieve the August 6 incident with Lashley—he grieved his entire, ongoing conflict with the transportation officers.   Although prison officials could have rejected Grievance 1456 insofar as it grieved issues other than Plaintiff's encounter with Lashley, they chose not to, and instead rejected Plaintiff's grievance on the merits.   Accordingly, I suggest that the Court should not enter summary judgment in favor of Drum, Ladd, Lashley, and the unknown officers as to Plaintiff's claims under the First Amendment, the Eighth Amendment, and the Michigan Constitution.

### 4.   Sovereign Immunity

Last, I suggest that Plaintiff's remaining official capacity claims against Ladd, Drum, Lashley, and the unknown officers should be dismissed to the extent that Plaintiff requests monetary damages.

The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). It is well established that a suit against a state officer in his or her official capacity is a suit against the entity he or she represents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Defendants Ladd, Lashley, Drum, and the unknown officers are correctional officers employed by JCF and by extension, the state of Michigan. (ECF No. 1, PageID.2–3.) Therefore, by suing Defendants, who are all officials of the state of Michigan, in their official capacities, Plaintiff is effectively suing the State of Michigan. *See Maben v. Thelen*, 887 F.3d 252, 257, 270–71 (6th Cir. 2018) (holding that the Eleventh Amendment barred a suit against a prison guard in his official capacity); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000) ("[T]he MDOC, as an arm of the State of Michigan, is entitled to sovereign immunity."); ; *Baskerville v. Blot*, 224 F. Supp.2d 723, 738 (S.D.N.Y. 2002) (holding that the Eleventh Amendment barred a lawsuit against "corrections officers [and] nurses employed by the New York State Department of Corrections" in their official capacities).

Accordingly, I suggest that, under the Eleventh Amendment, this Court lacks subject matter jurisdiction over Plaintiff's official capacity claims against Defendants, insofar as Plaintiff requests monetary damages. *See Ex parte Young*, 209 U.S. 123, 148 (1908) (holding that the Eleventh Amendment does not prohibit suits against states for injunctive relief); *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997)

("It is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court.").

### D. Conclusion

For the previously discussed reasons, **I RECOMMEND** that this Court **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgement (ECF No. 35.)

Specifically, I **RECCOMEND** that the Court: (1) **GRANT** summary judgment in favor of Defendant Drum, with prejudice, as to Plaintiff's claim that Drum violated Plaintiff's First Amendment Rights by issuing a retaliatory misconduct ticket; (2) **DENY** summary judgment in favor of Drum, Ladd, Lashley, and the Transportation Officers as to Plaintiff's claims that they violated his rights under the First Amendment, the Eighth Amendment, and Article 1, § 16 of the Michigan Constitution by inhibiting Plaintiff's access to medical care; and (3) **DISMISS** Plaintiff's official capacity claims against Drum, Ladd, Lashley, and the Transportation Officers, insofar as Plaintiff requests monetary damages.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 15, 2022

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge