UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anthony Harp,

                Plaintiff,        Case No. 19-cv-13789

v.                                  Judith E. Levy
                                   United States District Judge

Victoria Hallett, Lashley, Drum,
Ladd, and Transportation Officers,  Mag. Judge Patricia T. Morris

                Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [44], DENYING HALLETT'S MOTION FOR SUMMARY JUDGMENT [33]; ADOPTING IN PART REPORT AND RECOMMENDATION [46], GRANTING IN PART AND DENYING IN PART THE MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [35]; AND ADOPTING IN PART REPORT AND RECOMMENDATION [51] AND <u>ORDERING LIMITED DISCOVERY</u>**

Before the Court are three Reports and Recommendations ("R&Rs") from Magistrate Judge Patricia Morris. The first R&R was issued on January 27, 2022 (hereinafter referred to as the "Hallett R&R"). (ECF No. 44.) The Hallett R&R recommends that this Court grant Defendant Victoria Hallett's motion for summary judgment (ECF No. 33). (*Id.*) Plaintiff filed four timely objections to the Hallett R&R. (ECF No. 45,

PageID.346.) Hallett responded to the objections. (ECF No. 47, PageID.377.) For the reasons set forth below, Plaintiff's objections to the Hallett R&R are granted. The Hallett R&R is adopted in part and Hallett's motion for summary judgment on the basis of exhaustion is denied.

On February 15, 2022, Judge Morris issued the second of the three pending R&Rs (hereinafter referred to as the "MDOC R&R"). This R&R relates to certain named and unnamed Michigan Department of Corrections ("MDOC") staff's motion for summary judgment as to exhaustion only. (ECF No. 46.) The MDOC R&R recommends that the Court grant in part and deny in part Defendants Ladd, Lashley, and Drum's motion for summary judgment (ECF No. 35). Plaintiff filed four timely objections to the MDOC R&R, which are granted in part and denied in part. (ECF No. 48.) For the reasons set forth below, the MDOC R&R is adopted in part and summary judgment is granted in part and denied in part on Ladd, Lashley, and Drum's motion.

Judge Morris's third R&R was issued on October 6, 2022 (hereinafter referred to as the "John Doe R&R"). (ECF No. 51.) The John Doe R&R recommends dismissing Plaintiff's claims against John Does.

2

(*Id.*) Plaintiff filed timely objections to the John Doe R&R. (ECF No. 52.) For the reasons set forth below, the John Doe R&R is adopted in part, but only after Defendants provide limited discovery, in the manner and within the limitations set forth below.

## I. Background

The Court adopts by reference the background set forth in the Hallett R&R and MDOC R&R, having reviewed both and finding them to be accurate and thorough. (ECF No. 44, PageID.329–332; ECF No. 46, PageID.349–353.)

## II. Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already

3

presented to the magistrate judge are improper, *Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that dispute the general correctness of the report and recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, Plaintiff's objections must be clear and specific enough that the Court can squarely address them on the merits. *See Pearce*, 893 F. 3d at 346.

### III. Analysis

#### A. Objections to Hallett R&R

All four of Plaintiff's objections to the Hallett R&R address overlapping subject matter. Specifically, Plaintiff's objections relate to

the rejection of Plaintiff's Step II grievance as untimely.[1] The Hallett R&R sets forth the background of the timing issue as follows:

> . . . Plaintiff attempted to request pain medication from his health care provider. (ECF No. 33-1, PageID.154.) After his requests were denied, Plaintiff filed a timely step one grievance which was denied on the merits. (*Id.*) The MDOC's response to Plaintiff's step one grievance was returned to him on June 13, 2019. (*Id.*) However, Plaintiff was placed in administrative segregation at that time and did not receive the response until the evening of June 17. (ECF No. 33-1, PageID.152; ECF No. 40, PageID.312.) On June 19, Plaintiff requested a step two appeal form, and on June 25, Plaintiff sent a second request for an appeal form. (ECF No. 40, PageID.312–13.)
>
> Plaintiff did not receive an appeal form until July 5 (ECF No. 33-1, PageID.152.) Although Plaintiff's step two grievance was due on July 1, he never requested an extension. (*See id.* at PageID.152–53; ECF No. 40, PageID.312.) Instead, Plaintiff filed his step two grievance on the same day that he received his form. (ECF No. 33-1, PageID.152.) In his step two grievance, Plaintiff explained that he did not receive the form until July 5. (ECF No. 33-1, PageID.152.)
>
> Nonetheless, the step two grievance coordinator denied Plaintiff's appeal as untimely. (*Id.* at PageID.152–53.)

(ECF No. 44, PageID.331 (footnotes omitted).)

---

[1] The grievance in which Hallett is named contains the identifier JCF-19-06-0982-28E (hereinafter referred to as grievance "0982").

The specific portions of the R&R that Plaintiff objects to include the following references to his failure to seek an extension:

> Plaintiff could have submitted his step two grievance on time if he had requested an extension. Plaintiff alleges that he received his step one response on June 17, making the deadline for his step one grievance July 1—ten business days after he received his step one response. (ECF No. 40, PageID.312.) Had Plaintiff requested an extension, his due date could have been extended to July 22, at the latest. (*See* ECF No. 33-2, PageID.163.) This would have given Plaintiff enough time to submit the forms he received on July 5. Plaintiff's administrative remedy simply was not unavailable if the MDOC's policies provided a mechanism which he could have used to submit this grievance on time.

(*Id.* at PageID.336–337.)

Plaintiff argues that "there is no place in [the MDOC Policy Directive 03.02.130] that allows the grievant . . . to ask for any 'extension.'" (ECF No. 45, PageID.340.) He argues that his untimeliness was not his fault, because: "MDOC did not provide Plaintiff with the materials necessary for him to file his appeal until four days after Plaintiff['s] appeal was due." (ECF No. 45, PageID.341.) Plaintiff argues that it would be unfair to dismiss his case under these circumstances. (ECF No. 45, PageID.344.)

Plaintiff is correct that there is nothing in MDOC Policy Directive 03.02.130 that permits a prisoner to request an extension of time to submit a grievance at any of the three steps. *See* MDOC Policy Directive 03.02.130.[2] MDOC Policy Directive 03.02.130, authorized by Mich. Comp. Laws § 791.203 states that a grievance at any step "shall be rejected" by the Grievance Coordinator[3] "if . . . [t]he grievance is filed in an untimely manner." *Id*. at ¶ J5. The policy directive addresses the possibility that there may be a valid reason for a delay where it states: "The grievance shall not be rejected if there is a valid reason for the delay, e.g., transfer." *Id*. at ¶ J5. The policy directive does not set forth a procedure for a prisoner to take affirmative steps to obtain an extension.[4] *See id*.

---

[2] *See* https://www.michigan.gov/corrections/-/media/Project/Websites/corrections/Files/Policy-Directives/PDs-03-General-Operations/PD-0302-Programs-for-Offenders/03-02-130-Prisoner-Parolee-Grievances-effective-03-18-19.pdf?rev=446014aa6252426e8d4d6f396357c8c7.

[3] Grievance Coordinators are MDOC staff designated by each warden. *See* Policy Directive 03.02.130, ¶ O.

[4] The policy directive does, however, set forth a process for the *Respondent* to obtain an extension of time. "Respondent" is defined in the directive as "[t]he staff person who investigates and responds to a grievance." Policy Directive 03.02.130, ¶ B. The policy directive states: "Time frames for *responding to* grievances are set forth in this policy directive. An extension may be granted at the discretion of the grievance Coordinator for a Step I or II *response*." *Id*. at ¶ T (emphasis added).

7

When a prisoner fails to exhaust his administrative remedies and argues that his efforts to do so were thwarted, the Sixth Circuit requires that the district court analyze whether the prisoner's efforts to comply with the exhaustion requirements were "sufficient under the circumstances." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 224 (6th Cir. 2011). In determining sufficiency under the circumstances, this Circuit has differentiated between situations where the prisoner does nothing to comply with exhaustion requirements and situations where the prisoner makes "some affirmative efforts," but is still unsuccessful. *Id.* at 223.

On the "do nothing" end of the spectrum is *Napier v. Laurel County, Ky*. *Id.* There, the defendant argued that the plaintiff prisoner's case should have been dismissed because the plaintiff failed to exhaust the prison's grievance process before filing a lawsuit. The plaintiff argued that he was not required to exhaust because the prison's grievance process became "unavailable" to him after he was transferred to a different, private prison facility. *Id.* at 223. Based on the plaintiff's (incorrect) assumption that his transfer rendered the grievance process of his previous facility unavailable to him, he did not take any steps to comply with the grievance process. *Id.*

8

The Sixth Circuit upheld the district court's dismissal of the plaintiff's case for failure to exhaust. A prisoner must take affirmative steps in an effort to follow the grievance process before filing suit: "The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Id.* at 224 (internal citations omitted). The Court explained that, when a prisoner is "[f]aced with a policy that was not clearly unavailable, the only way to determine if the process [i]s available, or futile, [i]s to try." *Id.*

To be clear, the Sixth Circuit does not require a prisoner to "utilize every conceivable channel to grieve their case." *Id.* But if he "entirely fails" to invoke the grievance procedure before filing a lawsuit, the suit should be dismissed for failure to exhaust. *Id.* at 225.

On the other end of spectrum is *Peterson v. Cooper*, 463 F. App'x 528 (6th Cir. 2012). There, the district court dismissed the plaintiff's lawsuit for failure to exhaust administrative remedies. *Id.* at 529. Similar to this case, the plaintiff in *Peterson* was a Michigan prisoner subject to the Policy Directive 03.02.130. *Id.*

9

*Peterson* involved an allegation that, while removing the plaintiff's handcuffs, the defendant prison staff pulled the plaintiff's arms through the food slot in his cell door and injured him. *Id.* at 529. The plaintiff filed a timely Step I grievance, which was denied. *Id.* The plaintiff requested a Step II grievance form in accordance with the policy directive. He did not receive the form. The plaintiff then sent two more written messages to the grievance coordinator indicating that he needed and had not yet received a Step II form. *Id.* Both times, the grievance coordinator responded that she had already sent a Step II form to the plaintiff. *Id.* The grievance coordinator did not send the plaintiff the form again. *Id.* After some time had passed, the plaintiff used a Step I form to appeal his grievance to Step III. The prison rejected the plaintiff's appeal because he had not properly exhausted his grievance at Step II.

The plaintiff filed a lawsuit in federal court. The defendant successfully moved to dismiss based on the plaintiff's failure to exhaust. On appeal, Sixth Circuit reversed, finding that, "[u]nder the circumstances [the plaintiff's] efforts to exhaust were sufficient . . . with regard to the . . . staff members identified in his Step I grievance." *Id.* at 530. Those efforts included asking for a Step II form "on three occasions

and inform[ing] the grievance coordinator that he did not receive the form. . . but she did not send him another copy." *Id*. This excused Plaintiff's exhaustion requirement. *Id*.

As set forth in *Peterson*: "When a prisoner makes affirmative efforts to comply with the administrative grievance process but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id*. at 530 (internal quotations omitted). In the present case, Plaintiff requested the Step II grievance form twice before receiving it: first on June 19, 2019 and again on June 25, 2019.[5] Despite asking for the form twice, Defendants provided the form after Plaintiff's deadline had passed. Plaintiff's efforts to request the form twice makes the circumstances here similar to those in *Peterson*—where the plaintiff made an effort to exhaust but was still unsuccessful.

Plaintiff did not address his delay at Step II when he submitted his Step II grievance. (*See* ECF No. 35-3, PageID.232 (providing for the Step II reason for appeal discussion, which does not address the late-received

---

[5] It is possible that, if Plaintiff requested his Step II form on the evening of June 17, 2019 or on June 18, 2019, he could have received it and submitted it before the July 1, 2019 deadline. However, without knowing more about the reasons why the grievance coordinator was delayed in sending Plaintiff a Step II form, it is unclear whether the outcome would be different if Plaintiff had requested it a day earlier.

11

form).) It is unclear under the Sixth Circuit case law whether Plaintiff was required to raise the reasons for his delay at Step II in anticipation of rejection. Regardless, Plaintiff addressed the issue briefly in his Step III grievance (after learning that his Step II appeal was rejected on timeliness grounds). At Step III, he stated: "The three grievances[6] w[ere] submitted and answered at the same time, so the same request is evident that, *it was not my fault for the untimely submission of the 3 step II forms.*" (*Id.* at PageID.232.) (emphasis added)) Defendants did not address this in their Step III response. (Id. at PageID.231.)

Under these facts, Plaintiff made sufficient efforts to exhaust his administrative remedies under the circumstances, and his failure to exhaust at Step II is excused. Plaintiff's objection is granted and Hallett's motion for summary judgment on exhaustion grounds is denied.

### B. Objections to MDOC R&R

As set forth above, Plaintiff filed four timely objections to the MDOC R&R. (ECF No. 48.) Plaintiff's fourth objection is addressed first

---

[6] Plaintiff submitted three grievances at the same time, but the only grievance relevant to Hallett is grievance 0982 so that is the only grievance relevant to this analysis. Other grievances are discussed further below.

because it relates to an error in the MDOC R&R that is nearly identical to the error identified in the Hallett R&R, above.

Relevant to the discussion of the MDOC R&R is grievance JCF-19-05-0983 (hereinafter grievance "0983").[7] Grievance 0983 regards the following. MDOC staff was responsible for transporting Plaintiff to his radiation appointments. Often, due to his visual impairment, Plaintiff would bring visual aids[8] with him to his radiation appointments so that he could read and sign any paperwork. (*See* ECF No. 33-1, PageID.157, 159.) Plaintiff alleged in his grievance that the transportation staff treated him with hostility and called him names. (ECF No. 35-3, PageID.234.) Plaintiff refused to attend his radiation treatment because he did not want to ride with the officers who subjected him to harassment. (*Id.*) When Plaintiff refused to ride with these transportation officers, MDOC staff wanted Plaintiff to sign a release of liability form based on his refusal to obtain treatment. Plaintiff declined

---

[7] The MDOC R&R also discusses the 0982 grievance. Grievance 0982 was thoroughly addressed above. Accordingly, the R&R's discussion of the timeliness issue related to 0982, and Plaintiff's objection to it, need not be repeated in this section of the Opinion.

[8] Plaintiff describes the following items as his "visual aids": "monoscope, talking watch, blind canes, and solar shields." (ECF No. 33-1, PageID.159.)

13

to sign it, stating he was not refusing treatment but rather was refusing to be mistreated in transit to his appointments. (*Id.*)

A day after filing the grievance, Plaintiff had another radiation appointment. (ECF No. 35-3, PageID.244.) When it was time to be transported to his appointment, MDOC staff refused to allow him to bring his visual aids with him. (*Id.*) Plaintiff refused to go to treatment if he could not bring his visual aids, and then filed a grievance against the transportation officers, alleging that the officers' refusal was in retaliation for his earlier-filed grievance. (*Id.*)

Similar to grievance 0982, discussed above, Defendants' grievance response to grievance 0983 did not arrive until after Plaintiff was released from segregation, on June 18, 2019. (*Id.* at PageID.244.) As set forth above, Plaintiff requested a Step II grievance form on June 19, 2019 and again on June 23, 2019. As set forth above, he did not receive the forms until after the deadline for filing his Step II grievance had passed. (ECF No. 40, PageID.313.) Grievance 0983 was rejected for being untimely.

Similar to the Hallett R&R, the MDOC R&R indicates that Plaintiff "could have requested an extension that would have allowed him . . . to

14

file the grievance on time." (*Id.* at PageID.365.) Plaintiff objects, stating that the MDOC policies "[do] not provide for an extension." (ECF No. 48, PageID.385.)

Plaintiff's objection is granted. As with grievance 0982, Plaintiff made sufficient efforts to exhaust his administrative remedies when he requested the Step II form twice. In Plaintiff's Step III grievance to 0983, he addressed the timeliness issue where he indicated "see attached step 2 grievance request and the date it was delivered by unit staff," which, although not a model of clarity, is most likely addressing his requests for the form and Defendants' delayed response. (ECF No. 35-3, PageID.242.) Accordingly, Plaintiff's fourth objection is granted.

Plaintiffs first three objections to the MDOC R&R are denied. Plaintiff's first objection argues that "it is very convenient that on the day the grievance was reviewed that I was being harassed and had a false misconduct ticket written. . ." (ECF No. 48, PageID.382–383.) This argument does not address an error with the R&R; rather, it expresses a disagreement with its result. This is not a proper objection to an R&R and it is therefore denied.

15

Plaintiff's second objection to the MDOC R&R states that he disagrees with the R&R's characterization of Plaintiff's actions in response to the alleged harassment. He states that he "never refused [r]adiation treatment" but rather, was "prevented from attending treatment by the harassment and threats of further retaliation by [pursuing] the grievance process." (*Id*. at PageID.383.) Here, Plaintiff characterizes the events differently from the R&R. However, he does not identify a legal error and this issue has no impact on the outcome of the motion. Accordingly, Plaintiff's second objection is denied.

Plaintiff's third objection to the MDOC R&R states that he was "not present during the guilty verdict" from the ALJ. (*Id*.) Plaintiff disputes whether the ALJ requested that Plaintiff make a statement at an administrative hearing. (*Id*.) This factual discrepancy does not impact the outcome. Moreover, the objection is improper because it does not identify a legal error set forth in the R&R. Accordingly, Plaintiff's third objection is denied.

As to the remainder of the MDOC R&R, although neither party objected to it, the Court has reviewed it carefully and agrees that Plaintiff exhausted grievance 0456 as to Lashley, Drum, and Ladd. The Court also

16

agrees with the R&R's conclusion that summary judgment is granted in favor of Defendant Drum as to Plaintiff's retaliation claim against him because Plaintiff's request for a rehearing was filed after the deadline and without any explanation. And finally, the Court agrees with the R&R that Plaintiff's claims against Ladd, Drum, Lashley and unknown officers in their official capacities for monetary damages should be dismissed for the reasons set forth in the R&R. Accordingly, the MDOC R&R is adopted in part and the MDOC Defendants' motion to dismiss is granted in part and denied in part.

### C. Objections to John Doe R&R

On October 6, 2022, the Magistrate Judge issued the John Doe R&R. (ECF No. 51, PageID.395.) This R&R recommends that the Court dismiss the unknown Defendants because Plaintiff failed to identify them by the September 9, 2022 deadline set forth in the Magistrate Judge's separate order. (*Id.* (citing ECF No. 50).)

Plaintiff objects to the R&R because right after he served a discovery request on Defendants seeking the identity of the John Does, Defendants sought a stay of discovery. (ECF No. 36 (motion to stay discovery).) The Magistrate Judge granted a stay until after the

summary judgment decisions were made, and Defendants never responded to Plaintiff's discovery requests. (ECF No. 52, PageID.398–399; ECF No. 42 (order granting motion to stay discovery).)

The summary judgment motions were not fully resolved until today with the issuance of this Opinion and Order. Accordingly, the stay prevented Plaintiff from conducting discovery regarding the John Does' identities.

The stay on discovery is now lifted and Plaintiff has 45 days from today's date to identify the John Does or voluntarily dismiss them from the case. Assuming that the John Does are identified through the discovery process, Plaintiff must serve them within 90 days of learning their identities. Otherwise, the claims against them will be dismissed for failure to prosecute, as set forth in the R&R.

## IV. Conclusion

For the reasons set forth above, the Court denies Hallett's motion for summary judgment based on exhaustion. The Court grants in part and denies in part the MDOC Defendants' motion for summary judgment based on exhaustion. And the Court adopts in part and rejects in part the

18

R&R regarding the John Doe Defendants and permits discovery as to their identities in the manner set forth above.

IT IS SO ORDERED.

Dated: November 17, 2022  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 17, 2022.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager