## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTHONY HARP,

         *Plaintiff,*

*v.*

VICTORIA HALLETT,
TRANSPORTATION OFFICERS,
DENNIS LASHLEY,
DONALD DRUM,
CARL LADD,

         *Defendants.*

_____/

CASE NO. 5:19-cv-13789
District Judge Judith E. Levy
Magistrate Judge Patricia T. Morris

## REPORT AND RECOMMENDATION ON DEFENDANTS LASHLEY, DRUM, AND LADD'S MOTION FOR SUMMARY JUDGMENT
## (ECF No. 68)

### I.    RECOMMENDATION

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendants' motion for summary judgement (ECF No. 68) **IN PART**. If adopted, the Court would: (1) dismiss all of Plaintiff's claims for injunctive relief; (2) dismiss Plaintiff's First Amendment retaliation claims against Lashley, Ladd, and Drum; (3) dismiss Plaintiff's Eighth Amendment claims against Drum and Ladd, but not against Lashley; and (4) retain jurisdiction over Plaintiff's state law claims.

1

II. **REPORT**

A.    **Background and Introduction**

Anthony Harp is an inmate with prostate cancer in the custody of the Michigan Department of Corrections ("MDOC").  (ECF No. 1, PageID.8; ECF No. 33-1, PageID.144).  Beginning in spring of 2019, transportation officers would regularly drive Harp to a nearby hospital to receive radiation treatment.  (ECF No. 35-3, PageID.234).  But the officers treated Harp with hostility, often calling him derogatory terms such as a "blind cripple" and a "son of [a] bitch." (*Id.*)  Unwilling to tolerate the officer's comments, Harp eventually refused treatment altogether. (*Id.*)

Concerned about Harp's refusal, prison officials asked him to sign a "release of responsibility" form on May 15. (*Id.*)  Harp declined, maintaining that he should not have to "ride with transportation officers" who would harass him. (*Id.*)  After he refused to sign the form, Harp claims that he decided to attend his appointments again, but that officials stopped allowing him "to go to treatment." (*Id.*)  After five days of being refused transportation, Harp filed a grievance accusing the transportation officers of verbal abuse and reiterating that he would not sign a "release." (*Id.*)

A day after filing the grievance, Harp was scheduled to attend another radiation treatment at the hospital.  (ECF No. 35-3, PageID.244).  Harp decided to

attend this appointment, and to compensate for his poor vision, he attempted to bring several "visual aids": a "monoscope," a "talking watch," a cane, and "solar-shields." (*Id.*)  Although Harp had taken these items with him on previous trips and had explained that he needed them "to read and sign documents," transportation officers did not allow Harp to take his assistive devices with him.  (*Id.*)  Rather than attend his appointment without his visual aids, Harp stayed at the prison.  (*Id.*)  The following day, Harp again tried to take his visual aids with him to another appointment but chose to stay at the prison after transportation officers prevented him from bringing his devices.  (*Id.*)  Harp filed another grievance regarding both events, accusing the officers of prohibiting him from taking his visual aids in retaliation for filing his earlier grievance.  (*Id.*)

In June, transportation officers took Harp to a hospital for radiation treatment. (ECF No. 35-4, PageID.252).  Before Harp's treatment, Donald Drum, one of the transportation officers, escorted Plaintiff to the oncology department's bathroom so he could urinate.  (*Id.*)  Once Harp entered the bathroom, he asked Drum to remove his constraints, but Drum refused.  (*Id.*)  Drum then "propped" the door open with his foot despite Harp's requests that he close the door.  (*Id.*)  Upset that he could not urinate privately and free of restraints, Harp called Drum a "little bitch," and demanded that the officers take him back to JCF.  (*Id.* at PageID.249).  The officers returned Harp to the prison without treatment and placed him in administrative

segregation.  (*Id.*)  Drum later wrote a misconduct report, accusing Harp of insolence, threatening behavior, and sexual misconduct.  (*Id.* at PageID.252).

A Michigan administrative law judge ("ALJ") held a hearing on Harp's misconduct ticket.  (*Id.* at PageID.249.)  Although Harp admitted that he asked the officers to take him back to JCF and called Drum a "bitch," he accused Drum of filing the misconduct report "because of a grievance" Plaintiff had filed against the transportation officers.  (*Id.*)  In fact, MDOC officials had responded to his first grievance the same day Drum wrote the misconduct ticket, and officials responded to his second grievance just a day later.  (ECF No. 35-3, PageID.227, 242). (*Compare* ECF No. 35-4, PageID.251, *with* ECF No. 35-3, PageID.234, 244).  The ALJ found that Harp was guilty of insolence and threatening behavior, and sanctioned him with three more days of detention.  (ECF No. 35-4, PageID.249).

Despite having missed most of his appointments for the last two months, Harp met with transportation officers to attend another off-site radiation treatment in early August.  (ECF No. 35-3, PageID.229; ECF No. 68-7, PageID.695–96).  But before Harp could leave, Defendant Lashley, another transportation officer, threatened Harp, stating that if he did not "refuse" treatment, Lashley would put him "in the hole again."  (ECF No. 35-3, PageID.229).  Harp protested, claiming that he "did [not] do anything wrong," to which Lashley replied that Plaintiff did not "do

anything" wrong "the first time [they] put [him] in the hole either." (*Id.*; *see also* ECF No. 68-5, PageID.587).

Harp then brough this action against Drum, Lashley, and Carl Ladd, another transportation officer. (ECF No. 1). He alleges that the Officers violated (1) his First Amendment right to petition the government for redress by retaliating against him for filing grievances, and (2) his Eighth Amendment right to be free of cruel and unusual punishment by preventing him from attending his radiation therapy. (*Id.* at PageID.5–10). He also claims that the Officers violated analogous provisions under the Michigan Constitution. (*Id.* at PageID.5). Harp asks the Court to award him both monetary damages and injunctive relief. (*Id.* at PageID.10). Sometime after filing his complaint, Harp's physicians informed him that he effectively no longer had prostate cancer and did not require further treatment. (ECF No. 68-5, PageID.592–93).

Ladd, Lashley, and Drum then moved for summary judgment on all of Harp's claims, arguing that he failed to exhaust his administrative remedies before filing his complaint, as required by the Prison Litigation Reform Act. (ECF No. 35). The court granted their motion in part, dismissing Harp's retaliation claim against Drum insofar as he alleged that Drum retaliated against him by issuing a fabricated misconduct report. (ECF No. 53, PageID.425–26). The Court also dismissed all of Harp's official capacity claims to the extent that he sought monetary damages. (*Id.*)

5

The Officers have now moved for summary judgment again, this time arguing that Harp cannot prove that he is entitled to judgment as a matter of law on the merits of his federal claims.  (ECF No. 68).

### B.   Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that would affect "the outcome of the suit under the governing law. . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ."  *Id.* at 249–50, 255.  Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).  The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)).  Instead, the nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact [to] find in its favor."  *Anderson*, 477 U.S. at 248.

### C.     Analysis

#### 1.     Injunctive Relief

As a preliminary matter, I suggest that the Court cannot grant injunctive relief even if Harp succeeds on the merits of claims.  In his complaint, Harp requests both monetary damages and two distinct injunctions.  (ECF No. 1, PageID.10).  First, he asks the Court to enter an injunction "for his radiation treatment to be recontinued." (*Id.*)  And second, he asks the Court to order the officers to "cease and desist all threats and unconstitutional behavior."  (*Id.*)

As to Harp's request to have "his radiation treatment . . . recontinued," this claim is now moot.  The Constitution grants federal courts only the power to decide "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  In other words, federal courts may only decide "actual, ongoing" disputes between parties.  *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014).  To establish that his or her case is an "actual" justiciable dispute, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by favorable decision'" and the plaintiff's "requested relief."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007).  These elements are required not just to bring an action, but also to maintain litigation

in federal court.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

If "the issues presented are no longer 'live' or the parties lack a legally cognizable

interest in the outcome," of a particular claim, then that claim becomes "moot," and

the court loses jurisdiction over it.  *Powell v. McCormack*, 395 U.S. 486, 496 (1969);

*see also Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

Past injuries can be redressed with monetary or nominal damages, so a

plaintiff who brings an action for monetary damages need only show that the

defendant has caused him some prior injury.  *Rice v. Village of Johnstown*, 30 F.4th

584, 593–94 (6th Cir. 2022) (quoting *Uzuegbunam v. Preczewski*, 141 S. Ct. 792,

796 (2021)).  But unlike damages, forward-looking injunctions cannot remedy prior

conduct.  *Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395, at *2 (6th Cir. Jan.

19, 2022); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 111–12 (1983).  A

plaintiff who is no longer exposed to a defendant's unlawful actions cannot benefit

from an injunction proscribing those same actions.  *See Lyons*, 461 U.S. at 111–12.

Thus, a plaintiff who wishes to enjoin a defendant must show more than "past

exposure to illegal conduct"; the plaintiff must instead show "a non-speculative

threat 'that [he or she] will again experience injury as a result of' the alleged

wrongdoing."  *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Werner v. Primax*

*Recoveries, Inc.*, 365 F. App'x 664, 668 (6th Cir. 2010) (quoting *Lyons*, 461 U.S. at

109).

At his deposition, Harp shared that his doctors informed him that he was effectively cancer-free and no longer requires treatment. (ECF No. 68-5, at PageID.592–93). While Harp suspected that his doctors may have lied to him about his recovery, he presented no evidence beyond his own speculation to show that he still has cancer. (*Id.*; *see also* ECF No. 70). Thus, even viewing the evidence in the light most favorable to Harp, no rational factfinder could determine that he still has cancer. Nor could a reasonable factfinder conclude that Harp faces more than a speculative threat of his cancer recurring. *See O'Shea*, 414 U.S. at 495. Accordingly, his request for an injunction ordering the MDOC to reinstate his radiation therapy is moot.

As for Harp's request for the Court to order the Defendants to abstain from "threats" and "unconstitutional behavior," this injunction would be impermissibly vague. An injunction must be "specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). Indeed, injunctions are enforced through contempt proceedings and "[t]he judicial contempt power is a potent weapon," and when "it is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967); *see also NLRB v. Express Pub. Co.*, 312 U.S. 426, 433 (1941). Thus, an enjoined party must have reasonable notice of what, exactly, it is prohibited from doing. *Perez v. Ohio Bell Telephone Co.*, 655 F.

App'x 404, 412 (6th Cir. 2016).   In addition, injunctions should also generally "prohibit no more than the violation established in the litigation . . . ."   *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013); *accord Howe v. City of Akron*, 801 F.3d 718, 753 (6th Cir. 2015).   And for good reason: not only do overbroad injunctions raise vagueness concerns, but because injunctions are enforced through contempt proceedings, enjoining conduct beyond that at issue in a particular matter allows parties to bypass the usual procedures for bring a claim.   *Autozone, Inc.*, 707 F.3d at 841–42.

Harp's requested injunction raises these exact concerns.   Broadly ordering the Defendants to obey the Constitution and abstain from making "threats" gives them almost no notice of what they are required to do and threatens them with contempt proceedings for conduct not even at issue in this case.   (ECF No. 1, PageID.10). Because Harp does not specify what conduct he seeks to enjoin, the Court cannot enter injunctive relief on his behalf.

Plaintiff's request for an injunction should also be denied because "an injunction must be more specific than a simple command that the defendant obey the law." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2nd Cir. 2001)(quotations omitted); accord, *Lloyd v. Canon*, 2022 WL 5161424, at *18 (6th Cir. Oct. 5, 2022)("Broad sweeping orders to obey the law are not generally a remedy recognized by courts" and noting that most of the Circuit Courts have

10

adopted a rule against requests for injunctions that "'compel nothing more that obedience to existing law"); *Cousino v. Township of Marshall*, 2022 WL 2811693, at *5 (W.D. Mich. May 4, 2022)("Plaintiff's request that law enforcement officials not violate his rights in the future is overbroad and improper."), citing *Koetje v. Norton*, 2014 WL 4705410, at *3, n.1 (E.D. Mich. June 17, 2014)("obey the law " injunctions are not proper); *Dolberry v. Jakob*, 2017 WL 2126812, at *4 (N.D. N.Y. May 16, 2017).("Obey the law" injunctions are "vague [because they] do not require the defendants to do anything more than that already imposed by law").

### 2. Monetary Damages

The Officers argue that Harp cannot recover monetary relief either, both because his claims fail on their merits, and because they are protected by qualified immunity. *See Williams v. Kentucky*, 24 F.3d 1526, 1541 (6th Cir. 1994) ("[Q]ualified immunity only immunizes defendants from monetary damages.").

Under the doctrine of qualified immunity, a government official can only be held liable for violating an individual's constitutional right if that right was "clearly established" at the time. *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)). "A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (quoting *Anderson v.

*Creighton*, 483 U.S. 635, 640 (1987)). There need not be a case defining a constitutional right that directly mirrors the fact pattern confronted by the defendant: "'an official can be on notice that his conduct violates established law even in novel factual situations.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) (first quoting *Littlejohn v. Myers*, 684 F. App'x 563, 569 (6th Cir. 2017); and then quoting *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)). At the same time, however, courts "must not 'define clearly established law at a high level of generality.'" *Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). Existing precedent must place the "constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The key inquiry is whether it is "obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009); *see also Baynes*, 799 F.3d at 612–13 (quoting *Hope*, 536 U.S. at 741) (explaining that the touchstone of the "clearly established" inquiry is "fair warning"). When a Defendant raises qualified immunity on a motion for summary judgment, the Court must construe the facts in the light most favorable to the nonmoving party—just as it would on any other Rule 56 motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Thus, courts apply a two-part test to determine whether a government official is protected by qualified immunity: (1) whether the plaintiff has shown a violation

of a constitutionally protected right; and if so, (2) whether that right was clearly established such that a reasonable official would have understood that his behavior violated that right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion to answer these questions in either order. *Id.* at 236–39.

Harp brings two claims against Drum, Ladd, and Lashley: (1) First Amendment retaliation, and (2) deliberate indifference to his serous medical needs under the Eighth Amendment. For the following reasons, I suggest that all three of the Officers are protected by qualified immunity on Harp's retaliation claim, but that the Court should only enter summary judgment in favor of Ladd and Drum on Harp's Eighth Amendment claim.

### a.   Retaliation

In essence, Harp alleges that the Officers retaliated against him for filing a pair of grievances concerning their verbal harassment and refusal to allow Harp to bring his "visual aids" to his appointments. Harp alleges that the Officers retaliated against him by both continuing to verbally harass him (and thereby "preventing" him from accompanying them on trips to the hospital) and by threatening to place Harp in administrative segregation unless he declined to attend treatment. (ECF No. 1,

PageID.8–9; *see also* ECF No. 35-3, PageID.229, 231; ECF No. 46, PageID.356–58 (citing ECF No. 35, PageID.188)).[1]

The government may not punish individuals for exercising a protected constitutional right. *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994). Even "government actions" that typically would "not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to" retaliate against "an individual for [the] exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). Accordingly, a plaintiff alleging retaliation must establish three elements: (1) that he or she "engaged in protected conduct"; (2) that the defendant took "an adverse action" against him or her "that would deter a person of ordinary firmness from continuing to engage in

---

[1] According to the Officers, Harp "clarified" at a deposition that the only adverse action he alleges is that Drum "falsely" charged "him with a misconduct ticket and plac[ed] him in segregation," and the Court already dismissed this aspect of Harp's retaliation claims. (ECF No. 68, at PageID.541–42). But Harp's complaint dictates the scope of this case— not his deposition testimony. *See* 5 Charles Alan Wright et al., Federal Practice and Procedure § 1202 (4th ed. 2023). And his complaint accuses the Officers of "threaten[ing]" to "place [him] into segregation . . . every time he was called out to go to an appointment . . . ." (ECF No. 1, PageID.9, ¶ 9; *see also id.* at PageID.8–9, ¶¶ 6–7 ("Plaintiff was denied the ability to attend any of the physician ordered radiation treatments . . . thru [sic] the use of threats to issue false misconducts . . . in retaliation for the grievance [he] wrote . . . .")). Harp cannot amend his complaint through his deposition testimony. *Lemmons v. Georgetown U. Hosp.*, 241 F.R.D. 15, 29–32 (D.D.C. 2007). To be sure, Harp's pro se complaint must be "liberally" construed, and there may be circumstances where deposition testimony might help clarify vague allegations in a pro se complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But that is not the case here. Harp's complaint is unequivocal: he accuses the Officers of threatening to place him in segregation for accepting treatment "in retaliation" for filing grievances against them. (ECF No. 1, PageID.8–9, ¶¶ 6–7, 9).

that conduct"; and (3) that "but-for" the plaintiff's protected conduct, the Defendant would not have subjected the plaintiff to the adverse action. *Id.*; *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019) (internal quotation marks omitted).

The Court's inquiry here begins and ends with the first element of Harp's retaliation claim.   Although the First Amendment protects prisoners' right to internally report verbal harassment from prison officials, that right is not clearly established, and the Officers are therefore entitled to qualified immunity on Harp's retaliation claim.

### i.   Protected Activity

Harp alleges that Ladd, Drum, and Lashley retaliated against him for filing grievances accusing them of harassing him by calling him derogatory names and prohibiting him from taking his "visual aids" to appointments.   Inmates generally have a protected First Amendment right to file grievances against prison officials on their own behalf. *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).   But that right is not without limits.   Like most of an inmate's other Constitutional rights, prison officials may constrict an inmate's right to file grievances if doing so would reasonably further a legitimate penological objective. *Id.*; *see also Smith v. Campbell*, 250 F.3d 1032, 4037 (6th Cir. 2001).   Thus, for example, prisoners have no protected right to use the prison's grievance system in an "abusive or manipulative" manner, nor do they have a protected right to waste prison resources

by grieving "de minimis" or "frivolous" issues. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (internal quotation marks omitted).

The Officers argue that Harp's grievances are frivolous and therefore not protected by the First Amendment. The Officers do not explain what it means for a grievance to be "frivolous," but relying on *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), they insinuate that prisoners only have a protected right to grieve issues that would entitle them to relief in federal or state court. (*See* ECF No. 68, PageID.543–45). Thus, a grievance that could not bring about a plausible claim under federal or state law is "frivolous" and falls outside the scope of the First Amendment. (*Id.*) From this premise, the Officers conclude that Harp's grievances are frivolous because neither the Eighth Amendment nor any other law protect him from verbal harassment. (*Id.*); *see Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987).

But the Officers misread *Herron*. The *Herron* Court did not hold that grievances are necessarily frivolous if they address interests that are not protected by federal or state law. The protected conduct at issue in *Herron* was not just an internal prison grievance, but a "legal complaint" that may have been preceded by a grievance. *Herron*, 203 F.3d at 413, 415. The issue presented to the Court was whether that complaint, which had been dismissed by a district court as frivolous, was protected by the First Amendment. *Id.* at 415. The Court recognized that

16

prisoners generally have a constitutionally protected right to access the courts, yet it reasoned that "[d]epriving" inmates of "frivolous" claims deprives them "of nothing at all, except perhaps the punishment of [Rule 11] sanctions." *Id.* (internal quotation marks omitted) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).   Thus, retaliating against the plaintiff for filing a frivolous lawsuit did not impede his right to access the courts.  *Id.*

Unlike complaints, internal grievances affect more than just a prisoner's right to access the courts.  The MDOC's grievance procedure provides a mechanism for prisoners to seek "redress," for "unsatisfactory conditions of confinement" and "alleged violations of policy and procedure"—not just violations of state or federal law.  (ECF No. 35-2, PageID.209); *see also Johnson v. Johnson*, 358 F.3d 503, 522 (5th Cir. 2002) ("[T]he primary purpose of a grievance is to alert prison officials to a problem . . . .").  So while a prisoner's right to file lawsuits may be exclusively grounded in his or her right to access the courts, a prisoner's right to file grievances is not.  *See Cook v. Caruso*, 531 F. App'x 554, 562 (6th Cir. 2013).  Prison officials may redress legitimate concerns through the grievance process, even if those same concerns would constitute a "frivolous" claim if brought in a lawsuit.  Accordingly, an internal prison grievance need not allege a violation of state or federal law to be "nonfrivolous" and therefore protected by the First Amendment.  *Rayos v. Leavitt*, No. 1:20-cv-968, 2022 WL 873633, at *1 (W.D. Mich. Mar. 24, 2022); *see also*

*Garth v. Smith*, No. 2:21-cv-47, 2023 WL 3728556, at *3 n.2 (W.D. Mich. Apr. 21, 2023).

Indeed, the Sixth Circuit has since recognized that *Herron* did not hold that the frivolousness of an inmate's grievance depends on the merits of a hypothetical underlying claim. Just two years after its decision in *Herron*, the Court noted that "Herron's ruling is limited to retaliation claims involving *suits* dismissed as frivolous." *Bell v. Johnson*, 308 F.3d 594, 607 n.5 (6th Cir. 2002). *Herron* said nothing about situations where prison officials retaliate against prisoners for filing internal grievances on issues that were never litigated. *Id.*

True, the Sixth Circuit in *Maben v. Thelen* did recite *Herron*'s statement that the "right to file grievances is protected only insofar as the grievances are not 'frivolous'" when determining whether an internal grievance, unaccompanied by a lawsuit, was a protected activity. 887 F.3d 252, 264 (6th Cir. 2018). Yet even there, the Court found that the inmate's grievance was protected conduct without assessing whether the prisoner alleged a violation of state or federal law. *Id.* at 264–65. In *Maben*, an inmate alleged that prison officials retaliated against him for complaining to a group of cafeteria workers that he received half of his serving at lunch. *Id.* at 264. The Court doubted whether there even was a frivolousness or "de minimis exception to prisoner grievances," and suggested that the inmate's grievance was protected by the First Amendment simply because he sought "redress" related to

18

"prison conditions." *Id.* at 264–65. But even if there was a "de minimis" exception, the Court held that the inmate's complaint about his serving size was important enough to warrant First Amendment protections. *Id.* And the Court did so without analyzing whether the inmate's inadequate serving implicated the Eighth Amendment or any other law: it simply reasoned that the grievance was legitimate because it concerned a "major requirement of life." *Id.*

As in *Maben*, Harp's grievance was protected by the First Amendment regardless of whether it stated a nonfrivolous underlying claim for relief. So while the Officers are correct that "an inmate has no constitutional right to be free from verbal abuse," that alone does not defeat Harp's claim. (ECF No. 68, PageID.543). Indeed, it is unclear after *Maben* whether inmate grievances lose their First Amendment protection even when raising "de minimis" issues. *See* 887 F.3d at 264– 65. But even if they do, persistent verbal harassment from prison officials is not a "de minimis" issue. Even if verbal harassment of inmates might not raise constitutional concerns, it is abhorrent, unprofessional behavior that inmates must be able to report internally without fear of repercussions. *See Rivera v. Hassler*, 79 F. App'x 392, 394 (10th Cir. 2003); *cf. Maben*, 887 F.3d at 264–65. Accordingly, Harp's grievances were protected under the First Amendment. *See Rayos*, 2022 WL 873633, at *1.

### ii.   Qualified Immunity

Even so, Harp's First Amendment right to file his grievances was not clearly established under existing precedent, so he cannot recover monetary damages from the Officers in their individual capacities. *Williams*, 24 F.3d at 1541.  The purpose of qualified immunity is to protect all officials from individual liability except for those who "knowingly violate the law" or are "plainly incompetent." *Kisela*, 138 S. Ct. at 1152.  For that reason, officials should be immune from individual liability whenever it would not be "clear" to a "reasonable" officer that the official's conduct was unlawful. *Baynes*, 799 F.3d at 610.

No reasonable officer could confidently say whether Harp's grievances were protected as the Sixth Circuit has poorly defined the line between legitimate and frivolous grievances.  The Court's decision in *Maben v. Thelen* appears to be its only binding opinion discussing whether an internal grievance (as opposed to a lawsuit) is protected even when it raises a frivolous issue.  887 F.3d at 264–65.  But *Maben* itself sheds little light on the issue.  Although the Court left open the question of whether the First Amendment protects even "de minimis" or "frivolous" grievances, it took little time to explain why it found that the grievance—complaining of a single, inadequate serving at lunch—to be a legitimate issue. *Id.*  The Court did not explain what it meant for a grievance to be frivolous or legitimate. *Id.*  Nor did it otherwise lay out the general principles it applied to the facts of that case. *Id.*  Instead, the

Sixth Circuit simply held that whatever a frivolous grievance was, a "complaint about one of the major requirements of life" could not be characterized as such.  *Id.* at 265.  So because the inmate's grievance about an inadequate food serving touched on a major life requirement, the Court held that it was protected.  *Id.*

A reasonable officer could question whether *Maben*'s holding would extend to Harp's grievance.  The fact that the Sixth Circuit found an inadequate food portion to be a legitimate issue says little about whether it would view grievances concerning verbal harassment as frivolous.  And a reasonable officer could distinguish *Maben* on the basis that verbal harassment does not affect a "life necessity."  *See id.*  With no useful discussion of the law or plainly analogous facts, no reasonable official could be certain whether Harp's grievances raised legitimate issues under *Maben*. *See Baynes*, 799 F.3d at 610.

Yet that is not the only source of ambiguity.  Not only do the Sixth Circuit's existing precedents provide little guidance, but to muddy the waters even further, the Court has also issued an unpublished decision holding that internal grievances concerning verbal abuse are not protected by the First Amendment.  *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434459, at *2 (6th Cir. Sept. 18, 2000).  Of course, the Sixth Circuit's unpublished decisions are not binding.  *Sun Life Assurance Co. v. Jackson*, 877 F.3d 698, 702 (6th Cir. 2017).  And for that reason, unpublished opinions are poor evidence that a rule is clearly established.  *Bell v. City*

*of Southfield*, 37 F.4th 362, 367–68 (6th Cir. 2022).  But when "showing that the law was *not* clearly established" an "unpublished opinion can be quite relevant . . . ." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (emphasis added); *accord Stults v. Davis*, No. 5:20-cv-00021-HNJ, 2021 WL 5866850, at *8 n.14 (N.D. Ala. Dec. 10, 2021).  To say that Harp's right was clearly established would be to not only say that a panel of the Sixth Circuit issued a unanimous decision that contravened clearly established law, but that any reasonable official would have known not to rely on that opinion.  *Grissom*, 902 F.3d at 1168–69.

That asks too much of everyday officials with no legal training.  It is reasonable for an official to assume that any appellate decision is at least "debatably correct."  *Id.*  The courts cannot greenlight behavior and then penalize officials for doing exactly what they said was permissible.  *Id.*; *see also Fields v. City of Philadelphia*, 862 F.3d 353, 361 (3d Cir. 2017).  Accordingly, while Harp's grievances were protected by the First Amendment, I suggest that his right was not clearly established, and the Officers are therefore entitled to qualified immunity. Because Harp cannot obtain injunctive relief, and his request for monetary damages are barred by qualified immunity, I suggest that the Court should enter summary judgment in favor of Drum, Ladd, and Lashley on Harp's First Amendment retaliation claim.

###### b.    Eighth Amendment

Harp's Eighth Amendment claim presents a closer question.  Harp alleges that the Transportation Officers violated his Eighth Amendment rights by preventing him from attending radiation therapy to treat his prostate cancer.  The Eighth Amendment prohibits "cruel and unusual punishment."  U.S. Const. amend. VIII.  This protection applies not only to the terms of a convicted defendants' sentence, but also to the "conditions under which" a prisoner "is confined."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  Indeed, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being."  *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020); *see also DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 199–200.  Thus, the state has a duty to provide for the prisoner's "basic human needs," including "food, clothing, shelter, medical care, and reasonable safety."  *Deshaney*, 489 U.S. at 200.

An official violates the Eighth Amendment where he or she acts with "'deliberate indifference' to an inmate's 'serious medical needs.'"  *Plair v. Holmes*, No. 1:19-cv-815, 2020 WL 8187989, at *5 (W.D. Mich. Dec. 29, 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)).  To establish that prison officials violated the Eighth Amendment by denying medical care, the inmate must show (1) that he or she was deprived of an objectively serious medical need, and (2) that the

defendant knew "of and disregard[ed] an excessive risk to [his or her] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018).

Viewing the evidence in the light most favorable to Harp, a reasonable factfinder could determine that he was deprived of a clearly established, serious medical need. Yet Harp only raises a genuine dispute as to whether Lashley acted with deliberate indifference to his medical needs.

### i.  Serious Medical Condition

An inmate's need to establish the seriousness of his or her medical need derives from the Eighth Amendment's proscription of "cruel and unusual" punishment. *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). State actors do not violate the Amendment merely because they impose "uncomfortable" prison conditions. *Id.* So to prevail under the Eighth Amendment, a prisoner must prove that the state deprived him or her of necessary medical care. *See Rhinehart*, 894 F.3d at 737. If a physician has opined that a condition requires care, or if the need for care would be obvious to even a layperson, then the prisoner can prove that his or her medical need was "serious." *Id.*[2] In these situations, all an inmate need do to

---

[2] To be clear, the medical need at issue need not be "essential," as the Eighth Amendment does not apply only to life-threatening ailments. *Gutierrez v. Peters*, 111 F.3d 1364, 1370–71 (7th Cir. 1997). Thus, a physician or layperson may conclude that medical care is required whenever its denial would "result in" needless "pain and suffering." *Id.* (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 103).

establish that he or she was deprived of a serious medical need is demonstrate that officials provided either cursory treatment or no treatment at all.  *Rhinehart*, 894 F.3d at 737; *see also Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009).

The parties do not dispute that prostate cancer is a serious medical condition for which Harp missed necessary treatment.  (ECF No. 68, at PageID.553–54).  Nor do they dispute that Harp's need for treatment was mandated by a physician and obvious to a layperson.  (*Id.*)  Still, the Officers argue that Harp did not "need" these treatments because he recovered from his prostate cancer without them.

But Harp need not show that his missed treatments impaired his health to establish that he was deprived of a serious medical need.  Take *Boretti v. Wiscomb* for example.  930 F.2d 1150 (6th Cir. 1991).  There, the Sixth Circuit held that a reasonable juror could find that a prison nurse violated the Eighth Amendment by ignoring a physician's orders to clean a prisoner's surgical wounds even though the wounds eventually healed without becoming infected.  *Id.* at 1155–56.  Because the nurse did not follow the physicians' directions, the prisoner in *Borretti* resorted to using "soap, toilet tissue, and water" to clean his surgical wounds.  *Id.* at 1154. Although the prisoner successfully treated himself with his "makeshift dressings," the Sixth Circuit still reasoned that he plausibly alleged an Eighth Amendment violation.  *Id.*  Indeed, the Court explained that simply interrupting a "prescribed

plan of treatment could" violate the Eighth Amendment. *Id.* at 1154, 1156. Thus, forcing a prisoner to resort to treating his own injury when "relief was readily available" was "inconsistent with contemporary standards of common decency" and caused needless "physical pain and mental anguish." *Id.* at 1154–55.

Likewise, Harp's eventual recovery does not make his missed radiation therapy appointments any less necessary. Interference "with a prescribed plan of treatment," as the *Boretti* Court explained, is enough to show that an inmate has been denied a serious medical need. *Id.* at 1154–55. And the Sixth Circuit has often reiterated that the objective "seriousness" of a medical condition depends on the "risk" of harm, not the actual existence of harm. *E.g.*, *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018); *Walker v. Watkins*, 27 F. App'x 401, 406 (6th Cir. 2001). Thus, the necessity of treatment is examined from the information available at the time it was prescribed, not years later with the benefit of hindsight. *See Richmond*, 885 F.3d at 940. Prison officials cannot subject inmates to intolerable risks of harm by ignoring medical needs and then skirt liability just because the inmate happens to recover despite the officials' actions.[3] Thus, under clearly established precedent,

---

[3] Nor does Harp's recovery moot his claims or prevent him from obtaining damages. As explained in *Boretti*, it is the denial of necessary medical care, not the resulting injury, that violates the Eighth Amendment. *See* 930 F.2d at 1154–55. To that end, Harp may recover punitive or nominal damages (and arguably compensatory damages) for the denial of his Eighth Amendment rights. *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020).

Harp had a serious medical need for radiation therapy, notwithstanding his eventual recovery.

### ii.     Deliberate Indifference

Even if a juror concludes that Harp did not receive treatment for a serious medical need, that alone is not enough to find that the defendants violated his Eighth Amendment rights.   To prevail, Harp must also prove that the Officers were deliberately indifferent to his medical needs.   While the Officers need not have acted with the specific intent to injure Harp, it is not enough for Harp to show that the Officers were merely negligent.   At a minimum, Harp must show that the Officers consciously disregarded a perceived risk.   *Burwell v. City of Lansing*, 7 F.4th 456, 465 (6th Cir. 2021).   To do so, he must prove that the Officers knew "of the facts that show the serious medical need," that they "personally conclude[d] that" the need existed," and that they then "consciously disregarded" his needs.   *Phillips*, 14 F.4th at 535.   Even if the Officers "actually knew of a substantial risk to" Harp's "health or safety," they "may be found free from liability if they responded reasonably to the risk," regardless of whether "the harm ultimately was . . . averted.'"   *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834).

Harp presents no evidence that Drum or Ladd consciously disregarded his need for radiation therapy.   Harp explains that Drum, Ladd, Lashley and other unidentified transportation officers deterred him from attending his radiation therapy

by taunting him.  (ECF No. 68-5, at PageID.584, 586; *see also* ECF No. 48, at PageID.383).   Yet the record contains no evidence that either Drum or Ladd, specifically harassed Harp.  Harp identifies no grievances, deposition testimony, or affidavits where he directly accuses either officer of verbal harassment.  (ECF No. 70); *see* Fed. R. Civ. P. 56(c)(1)(3) (explaining that courts need only consider materials cited by the parties).

And even if he had, such evidence would not raise a genuine dispute of material fact as to whether Drum or Ladd disregarded his need for medical care.  Even if the Officers had harassed Harp, that would not deter a reasonable person from attending potentially life-saving treatment.  *Cf. Zimmer v. Unknown Metro*, No. 2:22-cv-1878911, 2023 WL 1878911, at *4 (W.D. Mich. Feb. 10, 2023).  Harp may have been justified in refusing to tolerate the Officer's verbal abuse, but that does not mean that he was denied access to treatment.  Harp could have chosen to grin and bear the Officers' harassment and attend his treatment.  But instead, he chose his pride over his health and decided not to attend his appointments.  So to the extent Harp missed treatment because of his unwillingness to tolerate name-calling, that was a product of his own decision, not the Officers' unwillingness to take him to his appointments.  *See Johnson v. Adams*, No. 9:14-CV-0811, 2016 WL 6604129, at *6 (N.D.N.Y. July 25, 2016) (holding that officers were not deliberately indifferent to an inmate's medical needs because the inmate refused treatment).  Accordingly,

28

Harp fails to raise a genuine dispute of material fact as to whether Drum and Ladd consciously disregarded his medical needs.

But as to Lashley, Harp presents more than just evidence of mere taunting. After choosing not to attend nearly all his appointments for the last few months, Harp decided to attend an appointment scheduled for early August. (ECF No. 35-3, at PageID.229; ECF No. 68-7, at PageID.695–96). But when he arrived, Harp claims Officer Lashley told him that he "would do best to refuse [treatment] after" filing grievances against the transportation officers. (ECF No. 35-3, PageID.229). If Harp did not refuse treatment, Lashley threatened to place him in administrative segregation. (*Id.* at PageID.229–30). Harp first made this accusation in a grievance he filed against the transportation officers, and he has since reiterated this accusation twice: once in an administrative appeal, and again at his deposition. (*Id.*; ECF No. 68-5, PageID.587). Prison officials have a duty to provide inmates with basic medical care; dissuading inmates from accepting treatment by threatening severe penalties is no different than refusing to provide care. *See Deshaney*, 489 U.S. at 200. *Compare Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (explaining that even "threat[s]" of adverse action can deter "a person of ordinary firmness" from engaging in First Amendment activity), *with Thaddeus-X*, 175 F.3d at 396 ("[A]dministrative segregation would certainly be adverse."). *See generally* Craig Haney, *The Science of Solitary: Expanding the Harmfulness Narrative*, 115 Nw. U.

29

L. Rev. 211 (2020).[4]  Accepting Harp's version of events, a reasonable officer would have understood that Lashley violated Harp's Eighth Amendment rights under clearly established precedent.  Accordingly, I suggest that Harp has raised a genuine dispute of material fact as to whether Lashley violated his Eighth Amendment rights.  The Court, therefore, should enter summary judgment in favor of Ladd and Drum, but deny summary judgment in favor of Lashley.[5]

### D. Conclusion

For these reasons, **I RECOMMEND** that this Court **GRANT** Defendants' motion for summary judgement (ECF No. 68) **IN PART**.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days

---

[4] True, mere threats of discipline generally do not implicate the Eighth Amendment in themselves. (*See* ECF No. 68, at PageID.556 (citing *Ivey*, 832 F.2d at 955)). But Harp does not argue that Lashley's *threats* to place him in segregation violated the Eighth Amendment, he claims that his missed radiation therapy, that was caused by Lashley's threats, constituted cruel and unusual punishment.  (ECF No. 1, PageID.8–9, ¶¶ 6–9).

[5] The Officers do not move for summary judgment on Plaintiff's state law claims.  Rather, they suggest only that the Court "should decline to exercise" supplemental jurisdiction "if" it dismisses all of Harp's federal claims.  (ECF No. 68, PageID.558 n.5).  While the Court has discretion to enter summary judgment on Harp's state law claims against the Officers, *sua sponte*, it need not do so without the benefit of full briefing on the issue.  *See Emp'rs Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 104–06 (6th Cir. 1995); Fed. R. Civ. P. 56(f).

after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 26, 2023                    s/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge